IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

OCT 28 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

FEDERAL HILL HOMEOWNERS )
    ASSOCIATION, INC., )
                                      )
    Plaintiff, )
                                      )
v. )          1:09cv251 (LMB/TRJ)
                                      )
COMMUNITY ASSOCIATION UNDERWRITERS )
    OF AMERICA, INC., et al., )
                                      )
    Defendants. )

## MEMORANDUM OPINION

Before the Court is plaintiff's Motion for Attorneys' Fees and Costs [Dkt. 58], in which plaintiff seeks an award of $251,728.88 to cover the costs of defending an underlying civil suit which defendants should have defended on its behalf. For the following reasons, FHHA will be awarded $217,308.86 in attorneys' fees and costs.

### I. Background

This Motion for Attorneys' Fees and Costs arises out of a dispute between the Federal Hill Homeowners Association ("FHHA") and defendants Community Association Underwriters of America and QBE Insurance Corporation (collectively "defendants") regarding the defendants' denial of insurance coverage for a lawsuit brought by a homeowner named Jayne Hornstein against FHHA in the Circuit Court of Fairfax County. The Hornstein lawsuit, which was filed in August 2007 and tried in December 2009, alleged that a potential sale of Hornstein's property had failed due to a

statement made by FHHA in a February 2006 disclosure packet that fencing on the property encroached onto a common area belonging to FHHA, thereby violating a Fairfax County easement. At the close of Hornstein's case, the trial court granted FHHA's motion to strike (the Virginia equivalent of a motion for judgment as a matter of law), which ultimately resulted in judgment being entered in favor of FHHA. Hornstein's appeal was recently denied by the Virginia Supreme Court.

Meanwhile, plaintiff filed a separate civil suit against defendants alleging breach of their duties to defend and indemnify FHHA in the underlying Hornstein litigation. FHHA's suit against defendants was removed to this Court on grounds of diversity jurisdiction on March 6, 2009. On July 24, 2009, this Court entered summary judgment against FHHA and in favor of defendants, finding that defendants had no duty to defend FHHA in connection with the Hornstein lawsuit. The Court of Appeals for the Fourth Circuit subsequently reversed that decision, holding that defendants had a duty to defend FHHA, and remanding the case to this Court for further proceedings consistent with that holding. <u>Federal Hill Homeowners Assoc., Inc. v. Community Assoc. Underwriters of Am., Inc.</u>, No. 09-1930, 2010 WL 2545460 (4th Cir. June 21, 2010) (unpublished).

On August 2, 2010, this Court issued a Show Cause Order as to why judgment should not be issued in favor of plaintiff. A

status conference was held on September 17, 2010, and plaintiff filed the instant motion on October 1, 2010, seeking attorneys' fees and costs in the amount of $251,728.88 to cover the expenses of defending the underlying Hornstein suit.

## II. Discussion

The party requesting attorneys' fees and costs bears the burden of demonstrating the reasonableness of the fees it seeks to recover. Cook v. Andrews, 7 F. Supp. 2d 733 (E.D. Va. 1998); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In calculating a reasonable fee, "[t]he most useful starting point" is the "lodestar" amount, which is determined by multiplying the number of hours reasonably expended in the matter by a reasonable hourly rate. Eckerhart, 461 U.S. at 433; Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). When analyzing lodestar figures, "[p]roper documentation is . . . key," and fee claimants must therefore submit documentation reflecting "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity." EEOC v. Nutri/System, Inc., 685 F. Supp. 568, 573 (E.D. Va. 1988).

The court may then subtract any hours that appear excessive, duplicative, or unnecessary, and may also reduce fees for hours spent on unsuccessful claims. Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, ___ F. Supp. 2d ___, 2010 WL

3064021, at *4-*5 (E.D. Va. July 30, 2010) (requiring the party requesting attorneys' fees to exercise reasonable "billing judgment" with respect to the hours worked and the fees claimed); see also Zhang v. GC Servs., 537 F. Supp. 2d 805 (E.D. Va. 2008). Courts in this District use twelve factors, collectively known as the Kimbrell factors, to evaluate the reasonableness of a petition for attorneys' fees and to make any necessary adjustments. Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978).

Plaintiff FHHA is entitled to recover its reasonable defense costs incurred during the Hornstein litigation. Virginia law, which applies in this diversity case, is well settled that an insurer's unjustified refusal to defend its insured renders the insurer liable for breach of its duty to defend. Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 189 (1990). As a result of such a breach, the insurer is liable for any judgment against

the insured or any settlement by the insured, as well as all reasonable expenses that the insured incurred in the course of defending itself. Erie Ins. Exch. v. Allstate Ins. Co., 50 Va. Cir. 61, 65 (1999); see also Safeway Moving & Storage Corp. v. Aetna Ins. Co., 317 F. Supp. 238, 246 (E.D. Va. 1970). In this case, the Fourth Circuit ruled that defendants breached their duty to defend FHHA in connection with the Hornstein litigation, and the plaintiff is therefore entitled to recover from FHHA the reasonable costs of successfully defending against the underlying Hornstein suit.[1] However, in light of the Kimbrell factors and the relevant lodestar calculations in this case, plaintiff's requested attorneys' fees will be reduced to $217,308.86.

A. Time and Labor Expended

FHHA was represented in the underlying Hornstein litigation by two law firms: Fagelson, Schonberger, Payne and Deichmeister, P.C. ("the Deichmeister firm"), and Rees Broome, P.C. ("Rees Broome"). Plaintiff's motion for attorneys' fees seeks compensation for 924.6 hours of work performed in the Hornstein case: 84.6 hours by the Deichmeister firm, and 840.0 hours by Rees Broome. The total amount of fees claimed is thus $251,728.88, with $23,765.46 paid to the Deichmeister firm and $227,963.42 paid to Rees Broome. In support of its motion,

---

[1] Because plaintiff ultimately prevailed in its defense of the underlying Hornstein case, any claim arising from a failure to indemnify is moot.

5

plaintiff has submitted detailed billing logs and summary tables chronicling the hours expended and fees charged, along with affidavits from the relevant attorneys who worked on the underlying Hornstein matter.

The Deichmeister firm, and in particular Robert Deichmeister, a partner with approximately twenty-five years of civil litigation experience, worked on the Hornstein matter from June 2006 to April 2009. During that time, the parties agree that Deichmeister's hourly rate was at most $275.00. See Pl.'s Mem. in Supp. of Mot. for Attorneys' Fees and Costs, Ex. H (Deichmeister Aff.); Def.'s Mem. in Reply to Pl.'s Mot. for Attorneys' Fees and Costs at 20. Meanwhile, the law firm of Rees Broome worked on the Hornstein case from May 2009 to June 2010, charging $225.00 to $240.00 per hour for the work of Stephen Charnoff, an associate with seven years of litigation experience, and $315.00 per hour for the work of Mark Graham, a partner with over a decade of litigation experience. Id. at 9. All of those billing rates are entirely reasonable for the Northern Virginia legal community, particularly in light of the attorneys' relevant expertise and experience. Therefore, no reduction in the hourly fee amounts is warranted.

However, this Court will reduce some of the 924.6 hours claimed by FHHA, eliminating any excessive, duplicative, unproductive, or unnecessary hours, along with the fees associated with those hours. Specifically, the following

reductions will be made:

## 1. Unnecessary or unsuccessful matters

First, FHHA's attorneys spent some portion of their hours on unnecessary or unsuccessful tasks, which will be subtracted, at least in part, from the amount of fees awarded. For example, in August and September 2009, FHHA's Rees Broome attorneys spent 22.2 hours, resulting in $5,751.00 in fees, preparing a draft Motion for Summary Judgment, which it appears was never actually filed or argued before the Fairfax County court. Plaintiff contends that the research conducted and the arguments developed in its preparation of the draft Motion for Summary Judgment were ultimately useful at trial, where FHHA prevailed over Hornstein. See Reply Mem. in Supp. of Mot. for Attorneys Fees and Costs at 13. However, the preparation of that unfiled motion was still not strictly necessary to the defense of the case, and some percentage of the hours spent in drafting the unused motion therefore ultimately proved fruitless. Accordingly, one-fourth of those fees, or $1,437.75, will be subtracted from the fee award.

Similarly, FHHA spent approximately 25 hours, resulting in $6,875.00 in fees, responding to Hornstein's discovery requests, including her Motion to Compel to obtain some of the documents that she had initially requested. The judge ultimately required FHHA to produce certain documents which it had failed to turn

over in its original production. Accordingly, ten percent of the discovery-related fees, or $687.50, will be subtracted from FHHA's attorneys' fees award.

Finally, FHHA's attorneys also spent 51.2 hours, resulting in $13,633.50 in fees, seeking monetary sanctions against Hornstein. The draft motion for sanctions was prepared in November 2009, but FHHA did not actually file its motion until several weeks after the trial had concluded. That delay necessitated FHHA's filing an accompanying Motion to Suspend Entry of the Final Order, in an effort to ensure that the trial court would retain jurisdiction over the case long enough to hear the sanctions motion. However, after a hearing, the Virginia trial court ultimately denied the Motion for Sanctions, in line with Virginia authority holding that sanctions of that nature are disfavored and not to be imposed lightly. See Montclavo v. Johnson, 17 Va. Cir. 382 (Richmond Cir. Ct. 1989). The court also denied the Motion to Suspend Entry of the Final Order, citing the fact that FHHA had ample opportunity to bring its motion before the court within the 21-day period after entry of the final judgment. Because FHHA's Motion for Sanction was both entirely and foreseeably unsuccessful, the entire $13,633.50 in fees relating to preparing that Motion for Sanctions will be subtracted from FHHA's requested award.

### 2. Unrelated matters

FHHA's motion for attorneys' fees also includes a number of

claimed hours for matters that are unrelated to, or at best
tangential to, the underlying Hornstein case. For example, as
evidenced by the billing records, FHHA's attorneys regularly
attended FHHA Board of Director and community meetings, billing
that time and claiming that it was part of the defense of the
Hornstein matter. Specifically, both Deichmeister and Graham
attended multiple board meetings and community meetings, for a
total of 17.3 hours expended and $5,259.50 in fees claimed.

Graham's affidavit states that he attended these meetings
"for the purpose of addressing the community on the status of the
Hornstein Lawsuit." Pl.'s Mem. in Supp. of Mot. for Attorneys'
Fees and Costs, Ex. A at ¶ 58. However, FHHA's attorneys were in
regular contact with Mark Hulshart, the FHHA President, during
the relevant time period, and any updates about the Hornstein
case could have been communicated to Hulshart and FHHA in a much
more economical fashion than by attending meetings to address the
entire FHHA Board and the Federal Hill community. The hours
expended preparing for and attending such meetings therefore
cannot legitimately be claimed as solely related to the defense
of the Hornstein lawsuit, and $5,259.50 in fees will therefore be
subtracted from plaintiff's claim for attorneys' fees.

Additionally, the billing records submitted by FHHA contain
at least one stray entry pertaining to work on the instant
insurance coverage matter, in which FHHA sued the defendants
alleging breach of their duty to defend, not to hours spent in

9

defense of the underlying Hornstein suit.[2] The Rees Broome firm worked on both matters, and plaintiff concedes that $584.25 in fees were incorrectly billed to the Hornstein suit and should be deducted from the fee award. See Reply Mem. in Supp. of Mot. for Attorneys' Fees and Costs at 13.

Finally, plaintiff's attorneys billed 28.1 hours, at a cost of $7,788.00, pursuing efforts to remove the fences at issue in the Hornstein case. The Hornstein litigation itself dealt only with FHHA's authority to require *Hornstein* to remove the fences, and with its authority to cite the fences' encroachment onto common areas as a violation in the Disclosure Packet. The Hornstein case, as originally framed, thus did not present the issue of whether *FHHA* had the authority to remove the fences itself. However, during the course of the Hornstein litigation, Hornstein's attorney stipulated, for the purposes of that case only, that the fences were part of a common area belonging to the Federal Hill community. After that concession, FHHA then initiated actions to remove the fences itself, despite the fact that FHHA and Hornstein remained at odds regarding the ultimate merits of the boundary dispute. Hornstein resisted FHHA's attempts to remove the fencing and eventually sought an emergency injunction to prevent FHHA personnel from coming onto the

---

[2] There is no relevant fee-shifting provision relating to plaintiff's claims against defendants for breach of their duties to indemnify and defend, so no attorneys' fees can be awarded for work performed on that matter.

10

property and removing the fences. As a result, FHHA's attorneys were required to engage in numerous conversations with Hornstein's counsel, to communicate with police officers about FHHA's attempts to enter the property and remove the fences, and eventually to defend against Hornstein's emergency preliminary injunction. All of those fees and costs were of FHHA's own making and were not strictly necessary to defend against Hornstein's lawsuit. For that reason, $7,788.00 will be subtracted from plaintiff's attorneys' fees award.

### 3. Duplicative matters

Additionally, plaintiff employed two separate firms to work on the Hornstein litigation: the Deichmeister firm and Rees Broome. The Deichmeister firm had previously represented FHHA since 1990, with Deichmeister serving as lead counsel in the Hornstein case from the time that Hornstein's complaint was filed in August 2007 until May or June 2009, when Graham and his firm, Rees Broome, assumed responsibility. To explain this change in counsel, FHHA indicates that when it realized that defendants were refusing to defend or indemnify it against Hornstein's lawsuit, it sought out a firm to represent it with respect to that insurance coverage matter. FHHA selected Reese Broome as counsel for that issue because of "their broad experience in representing Community Associations and Graham's specific experience litigating insurance coverage disputes on behalf of Community Associations." Pl.'s Mem. in Supp. of Mot. for

11

Attorneys' Fees and Costs at 12. FHHA's Board then decided to have Rees Broome handle not only the claim against defendants in this case for breach of their duties to indemnify and defend, but also the ongoing defense of the underlying Hornstein lawsuit. FHHA submits that that decision was made because it "would be most cost-efficient for the same law firm to handle both matters." Id.

Plaintiff is not actually claiming any strictly duplicative hours for work performed simultaneously by both the Deichmeister firm and Rees Broome. Rather, FHHA's motion seeks reimbursement for legal bills from the Deichmeister firm from June 2006 to April 2009, and bills from Rees Broome from May 2009 to June 2010. See id. Exs. D & E (containing billing records and summaries of fees charged by each firm). However, the transition to new counsel undoubtedly created some inefficiencies and duplication in work, as the Rees Broome attorneys had to spend substantial time getting caught up on the relevant issues, with which Deichmeister was already familiar. For example, Rees Broome associate Charnoff admits in his affidavit that his "initial involvement required [him] to expend a significant amount of time learning the underlying facts of the case, analyzing the pleadings, analyzing discovery requests and responses, and reviewing documents produced in discovery." Id. Ex C., at ¶ 35.

Moreover, Rees Broome's billing records for May 2009 include

a large number of entries dealing with review of the underlying Hornstein documents, such as "Review documents re: 3019 buyer, real estate agents; internal correspondence re: same," "Review underlying Hornstein suit files with RWW in preparation for next steps," "Analyze all documents produced by Federal Hill to Hornstein," and "Complete reviewing documents produced by Hornstein." Id. Ex. E, at 38-40. In total, approximately one-third of the 30.4 hours and $6,000.50 in fees for Rees Broome's May 31, 2009 invoice reflect Rees Broome attorneys' review of the underlying documents in get up to speed on the case. Accordingly, to account for the inefficiencies during the Rees Broome attorneys' learning curve, this Court will reduce the attorneys' fees claimed by the plaintiff by an additional $2,000.17, on top of the other itemized reductions outlined above.

Finally, even within the Rees Broome firm, there were some inefficiencies and duplication in work. Specifically, Rees Broome attorneys spent 109.1 hours, totaling $30,293.50 in fees, preparing for the five depositions conducted in the Hornstein case. Graham spent approximately 30 hours preparing for those depositions, and Charnoff, a Rees Broome associate, spent additional hours preparing deposition outlines and exhibits for those same depositions. Undoubtedly, FHHA's attorneys had to both prepare for and take multiple depositions for the defense of the Hornstein matter. However, $30,293.50 in fees for only five

13

depositions is somewhat excessive, particularly given the use of two different attorneys to prepare for the same depositions. This Court will therefore subtract ten percent of the fees associated with the deposition preparation, yielding a fee reduction of $3,029.35, to account for any inefficiencies and duplication of work.

B. Other Kimbrell Factors

None of the other Kimbrell factors warrants an increase or any further reduction of the attorneys' fee award. The Hornstein lawsuit essentially presented issues of relatively common business torts and did not involve any particularly novel or difficult questions, although it did require some special knowledge and understanding of the Federal Hill community association and its property. The two lead attorneys involved in the representation, Deichmeister and Graham, are both experienced litigators who are well versed in representing community associations like FHHA, and their knowledge and experience was properly reflected in their reasonable hourly rates. There was nothing particularly desirable or undesirable about this type of case within the Northern Virginia legal community, and neither party has cited any attorneys' fees awards in similar cases to support its position. The opportunity costs in pursuing the litigation, the time limitations imposed by the client or circumstances, and the nature and length of the professional relationship between attorney and client also do not weigh

heavily on one side or the other.

Defendants' primary remaining arguments for a reduction of the attorneys' fees award in this case thus center on a claim that the amount of work done by FHHA's counsel was disproportionate to the relief Hornstein sought, and that "FHHA's actions were the impetus behind the *Hornstein* lawsuit, thereby creating and expanding unnecessary litigation." Mem. in Reply to Pl.'s Mot. For Attorney's Fees and Costs at 4. However, the <u>ad damnum</u> clause in Hornstein's lawsuit sought $250,000.00 in compensatory damages and $100,000.00 in punitive damages, as well as attorneys' fees that have been variously estimated to total between $100,000.00 and $250,000.00. <u>Id.</u> at 24. Even acknowledging that Hornstein was unlikely to recover either attorneys' fees or punitive damages under Virginia law, Hornstein's lawsuit also potentially implicated significant legal rights belonging to FHHA, including its authority to issue disclosure packets regarding property sales and its property rights over the fences and common area at issue.

Moreover, defendants argue that FHHA might have been able to resolve at least a portion of the Hornstein dispute somewhat earlier by promising at the outset, as it eventually represented during the Hornstein trial, that it would no longer place any language in future disclosure packets stating that Hornstein was required to remove or build fences. However, that strategic representation was the result of years of litigation and formed

15

only part of the ultimate resolution of the Hornstein case - a resolution that was highly favorable to FHHA overall, and that in fact resulted in FHHA not having to pay a single cent in damages to Hornstein. Additionally, it appears that FHHA, through its Board members and counsel, made multiple efforts to resolve the Hornstein litigation through an amicable settlement. See Mem. in Supp. of Mot. for Attorneys' Fees and Costs at 10. Those efforts were all rebuffed by Hornstein, who continued to demand not only upwards of $90,000.00 in damages, but also that she be permitted to maintain her fences on land that FHHA believed to be its common property, maintained for the benefit of all Federal Hill community residents.

Finally, and most importantly, if defendants truly believed that they could have settled or defended the Hornstein lawsuit more cheaply or more expeditiously than did FHHA's chosen counsel, they had every opportunity to do so. Instead, as the Fourth Circuit found, they breached their duty to defend FHHA in the Hornstein matter. Defendants have therefore forfeited their right to complain that the costs FHHA incurred in defending the Hornstein lawsuit were unreasonable. See Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 252 Va. 265, 269 (1996) (holding that an insurance company's refusal to defend is at its own risk); Breener v. Lawyers Title Ins. Corp., 240 Va. 185, 189 (1990) (same). Accordingly, plaintiff's requested attorneys' fees will not be further reduced.

## III. Conclusion

For all these reasons, this Court finds that a total award to plaintiff of $217,308.86 in attorneys' fees is reasonable and will be awarded by an Order to be issued with this Memorandum Opinion.

Entered this 28th day of October, 2010.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge